[No. 18341.    In Bank.—July 31, 1895.]

## LOWER KINGS RIVER RECLAMATION DISTRICT, NO. 531, RESPONDENT, v. P. C. PHILLIPS ET AL., APPELLANTS.

RECLAMATION DISTRICT—VALIDITY OF ORGANIZATION—CHARACTER OF LAND INCLUDED—RES JUDICATA—ASSESSMENT—EVIDENCE.—An order of the board of supervisors made upon a proper petition, after due notice and appearance and answer or remonstrance by the owner of land claimed by him to have no need of reclamation, by which a reclamation district was organized so as to include his land, is conclusive evidence against him that the district was lawfully organized, and that his land included therein was of a character which the law authorized to be included in the district, and is *res judicata* between the parties; and, in an action to enforce an assessment upon his land, no evidence is admissible to prove that the district was not lawfully organized.

ID.—ASSESSMENT OF LAND IN PROPORTION TO BENEFITS—EVIDENCE—ASSESSMENT-ROLL NOT CONCLUSIVE.—The assessment-roll of the reclamation district in due form is not conclusive evidence that the assessment was made in proportion to benefits; but the defendant against whom the assessment is sought to be enforced may, under a denial that the assessment was proportionate to the benefits which result to each tract from the reclamation works, offer evidence tending to prove that his land was not benefited by the reclamation works, and was arbitrarily and excessively assessed without regard to proportionate benefits.

ID.—DEFENSE—ATTACK UPON ASSESSMENT—OPPORTUNITY TO BE HEARD—DUE PROCESS OF LAW—OVERRATING OF BENEFITS.—An attack may be made upon the determination of the assessment commissioners by way of defense to an action upon the assessment, where there has been no prior hearing or opportunity to be heard before the commissioners; and to deprive the defendant of a hearing in defense to such action would be to deprive him of his property without due process of law; and any material overrating of benefits and consequent assessments injurious to the taxpayer which are not within the maxim *de minimis* may be pleaded and proved as a defense, whether such overrating be the result of fraud or negligence of the commissioners.

ID.—COLLATERAL ATTACK—FINAL DETERMINATION—NATURE OF DEFENSE.— A collateral attack implies a final judicial determination in which the parties have been heard; and any attack upon a final determination provided by law to avoid or correct a judgment is a direct and not a collateral attack; but a defense to an action upon a reclamation assessment, where there has been no prior hearing, cannot properly be called an attack upon a final determination, either direct or collateral, but the suit is a step in the proceeding to subject the property to the burden of the tax, the charge of which does not become final until the suit is determined against the property owner.

ID.—DESCRIPTION OF LAND IN ASSESSMENT-LIST—ABBREVIATIONS.—The fact that in the description of land in the assessment-list the abbreviations used are not those ordinarily used does not vitiate the description, if they are uniformly used in the same manner in the list, and must have been understood by all taxpayers who examined them.

ID. — QUALIFICATION OF COMMISSIONER — SECRETARY OF BOARD — APPOINTMENT BY OWNERS.—The secretary of the board of trustees of the reclamation district is not disqualified for the office or position of commissioner to view and assess the land, by reason of interest in the matter of the assessments, merely because he received a salary as secretary of the board, and received his appointment from the trustees of the district who owned a majority of the land in the district, where he himself owns no land in the district and has no pecuniary interest that could be affected by the assessments.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. M. K. HARRIS, Judge.

The facts are stated in the opinion rendered in Department One.

*Daggett & Adams*, for Appellant.

In actions like the one now under consideration a defendant has a right to set forth, by way of defense, all his grievances, and he is not limited in his defense, but may show any fact which has the effect of invalidating the assessment which the action seeks to enforce against his land. (Cooley on Taxation, 265, 266, and note; Pol. Code, sec. 3456; *Reclamation Dist. No. 108* v. *Evans*, 61 Cal. 104; *Hagar* v. *Reclamation Dist. No. 108*, 111 U. S. 711; *Reclamation Dist.* v. *Goldman*, 65 Cal. 637; *People* v. *Coghill*, 47 Cal. 361; *People* v. *Hagar*, 49 Cal. 229; *People* v. *Ahern*, 52 Cal. 208; *Swamp Land Dist.* v. *Gwynn*, 70 Cal. 570; *Gwynn* v. *Dierssen*, 101 Cal. 563.) The

lower court erred in excluding the evidence offered by defendants touching the character of the lands described in the amended complaint, and touching the question of the benefits to said lands. (Pol. Code, sec. 3456; *People* v. *Hagar*, 66 Cal. 60; *People* v. *City of Riverside*, 70 Cal. 461; *Irrigation Dist.* v. *De Lappe*, 79 Cal. 360; *Board of Directors* v. *Tregea*, 88 Cal. 353; *Reclamation Dist.* v. *Gray*, 95 Cal. 601; *Stuart* v. *Palmer*, 74 N. Y. 191; 30 Am. Rep. 289; *County of Redwood* v. *Winona etc. Co.*, 40 Minn. 518; *Swamp Land Dist.* v. *Gwynn, supra; Patten* v. *Green*, 13 Cal. 325; *The Railroad Tax cases*, 13 Fed. Rep. 752, 753, opinion by Field, J; same case, opinion by Sawyer, J., 762–66; *Mulligan* v. *Smith*, 59 Cal. 230; *Boorman* v. *Santa Barbara*, 65 Cal. 313; *Butler* v. *Supervisors*, 26 Mich. 22; *Davidson* v. *New Orleans*, 96 U. S. 97; *Hutson* v. *Protection Dist.*, 79 Cal. 90; *Thomas* v. *Gain*, 35 Mich. 165; 24 Am. Rep. 535; *Gilmore* v. *Hentig*, 33 Kan. 169; Cooley on Taxation, 266, 450; *Kahn* v. *Board of Supervisors*, 79 Cal. 388; *Lent* v. *Tillson*, 72 Cal. 404; *Spring Valley Water Works* v. *San Francisco*, 82 Cal. 286, 332, 334; 16 Am. St. Rep. 116; *Davies* v. *Los Angeles*, 86 Cal. 37; *Santa Clara County* v. *Southern Pac. R. R. Co.*, 18 Fed. Rep. 410–12; opinion by Field, J., pp, 415–27; opinion by Sawyer, J., and notes to that case as to the right to a hearing, p. 451; *Scott* v. *City of Toledo*, 36 Fed. Rep. 396–401; *Kuntz* v. *Sumption*, 117 Ind. 1; *Garvin* v. *Daussman*, 114 Ind. 429; 5 Am. St. Rep. 637; in this case *Reclamation Dist.* v. *Evans, supra*, was affirmed; *McEneney* v. *Town of Sullivan*, 125 Ind. 407; *Tucker* v. *Sellers*, 130 Ind. 514; *Smith* v. *Rude Bros. Mfg. Co.*, 131 Ind. 150; *Barber Asphalt Pav. Co.* v. *Edgerton*, 125 Ind. 455; *Lent* v. *Tillson*, 140 U. S. 316–24, opinion by Harlan, J., 326, et seq; *Spencer* v. *Merchant*, 125 U. S. 345; Lewis on Eminent Domain, sec. 364, and cases cited in note 1; also sec. 365, and cases cited in note 1 thereto.) The board of supervisors never had power or jurisdiction to include the defendant's land in the plaintiff district, because defendant's land never was at any time swamp or overflowed land. (Pol. Code, secs. 3446–49; Stats.

1880, p. 119.) The act here cited was practically held unconstitutional in *Bixler's Appeal,* 59 Cal. 550; *Bixler* v. *Board of Supervisors,* 59 Cal. 698; *Williams* v. *Board of Supervisors,* 65 Cal. 160; *Stevenson* v. *Superior Court,* 62 Cal. 60, and authorities there cited; cited and approved in *Kahn* v. *Board of Supervisors,* 79 Cal. 400; Pol. Code, c. 1, tit. VIII, sec. 3488; *Hall* v. *Wisconsin,* 103 U. S. 9; *Bunn* v. *People,* 45 Ill. 398; *People* v. *Middleton,* 28 Cal. 603, and the numerous other cases cited in Mechem on Public Officers, sec. 35.

*S. C. Denson,* for Respondent.

In the absence of fraud the decision of the commissioners is binding and conclusive, and cannot be attacked collaterally, and the court below properly discarded all evidence proposed at the trial for the purpose of impeaching the wisdom of the officers who apportioned the asssessment. (*People* v. *Hagar,* 52 Cal. 171; *People* v. *Hagar,* 66 Cal. 59; *Reclamation Dist.* v. *Parvin,* 67 Cal. 501; *Reclamation Dist.* v. *Goldman,* 65 Cal. 635; *Swamp Land Reclamation Dist.* v. *Wilcox,* 75 Cal. 443; *Swamp Land Dist.* v. *Gwynn,* 70 Cal. 566; *Dean* v. *Davis,* 51 Cal. 406; *Hoke* v. *Perdue,* 62 Cal. 545; *People* v. *La Rue,* 67 Cal. 526; Dillon on Municipal Corporations, sec. 43 *a,* and cases cited; *Reclamation Dist.* v. *Gray,* 95 Cal. 601.) When the board of supervisors has passed upon the question, and organized a reclamation district, all the lands within that district are subject to assessment, regardless of the character of the land, as to whether it was swamp or dry. (*Reclamation Dist.* v. *Evans,* 61 Cal. 104.)

Temple, J.—After a careful examination of the original arguments of counsel, and of the petition for a rehearing, and also the briefs in *Reclamation Dist. 307* v. *Glide,* one of which contains an elaborate review of the opinion rendered in Department, I am convinced that the judgment ordered and the opinion rendered should stand.

The point upon which the rehearing was asked was that the conclusion in Department, that "the court erred in excluding the evidence tending to prove that defendants' land was not benefited by the reclamation works, and was arbitrarily and excessively assessed without regard to proportionate benefits," was unwarranted. Naturally to this point our attention has been mainly directed, and, while the matter is fully and satisfactorily discussed in the opinion, I will notice some of the objections urged.

It is contended that the opinion overrules several decisions of this court, and that neither the case of *Reclamation Dist.* v. *Evans*, 61 Cal. 104, nor the other cases cited in support of the conclusion reached in Department, sanction that conclusion.

In *People* v. *Hagar*, 52 Cal. 171, it was said: "The statute confides to the commissioners the duty of ascertaining the benefits to each parcel of land severally. They must exercise their judgment and discretion, and, in the absence of fraud, their action in this respect cannot be attacked and shown to be erroneous in a collateral proceeding." This case, and those in which the decision has been followed or approved, constitute, in the main, the authorities which it is claimed are in conflict with the opinion rendered in Department. They are cited in that opinion.

The attention of the court in the case of *People* v. *Hagar*, *supra*, was not called to the proposition that the taxpayer had been afforded no opportunity to be heard, and that without such opportunity the assessment could not become a fixed and final charge; and, further, unless such opportunity was afforded by the statute it was void, and the assessment invalid.

In the subsequent case of *Reclamation District* v. *Evans*, *supra*, the counsel for the appellants, both of whom had appeared as counsel in the case of *People* v. *Hagar*, *supra*, say in their brief: "The question as to whether a given assessment is in proportion to benefits is a question of fact which must be determined favor-

ably or unfavorably to a party by the commissioners, whose duty it is to make the assessment. No other board or officer has power to review their decision, and no means are provided by which a party can be heard before them, or by which their decision can be reviewed. This court has held that their determination upon this question is final and conclusive, and hence their determination is a judgment in the strict sense. (*People* v. *Hagar, supra.*)

The constitutional provision was cited, and it was insisted that no hearing was provided for in the statute. In view of a further point to be noticed hereafter, it should be noted that the matter upon which counsel contended that a hearing ought to have been provided was in regard to the judgment of the commissioners as to whether a given assessment was in proportion to benefits.

The court stated the claim of appellant as follows: "They (the provisions of the code) are said to be unconstitutional because they do not provide for any mode by which a party assessed should have notice of the proceeding and an opportunity to object to the amount charged against his land."

The first question which the court had to decide in that case was whether the statute did provide the taxpayer with the opportunity to be heard as to the amount of his assessment before the tax became a final and fixed charge against his land, and whether the opportunity afforded constituted due process.

It was held that such opportunity was afforded because the tax could only be collected by a suit in which the defenses were not limited, and that in such action "the appellant here could have shown that the sums assessed against his property were not 'proportionate to the benefits' resulting from the work of reclamation."

It was further said that appellant could not complain because the court on such hearing had no power to change the assessment, since the court had the power

to declare the assessment invalid so far as it purported
to create a charge against his land.

The point was necessarily involved in that case. The
court could not have avoided deciding it unless it was
prepared to hold that an assessment not made in accord-
ance with an arbitrary standard laid down by the leg-
islature, but by some rule which required the use of
judgment and discretion, could be made a final charge
against property when the taxpayer has had no oppor-
tunity to be heard.

The court was not prepared to sanction this last
proposition, and therefore the only alternative was to
find that the law did afford an opportunity to be heard
as to the amount of the assessment, or that the statute
was void and the tax invalid.

The same view was taken in *Reclamation District* v.
*Goldman*, 65 Cal. 637, and in *Swamp Land District* v.
*Gwynn*, 70 Cal. 566.

*Hutson* v. *Protection District*, 79 Cal. 90, arose under
an act entitled "An act to provide for the protection of
lands from overflow, other than lands recognized as
swamp lands." Under this law districts were formed
and trustees elected who provided plans for protecting
the district and made the assessment. No hearing was
provided for, and the tax was collected by a sale of the
lands and without suit.

This court held the act unconstitutional, saying: "No
provision is made anywhere in the statute for a hearing
by the landowner whose land is to be charged. No
notice is to be given him when the board of trustees is
to levy the assessment, and, if he appears when such
assessment is to be levied by the board of trustees, no
hearing by the board is provided for in the act. The
assessment is, by the terms of the act, made an absolute
lien on his property without any provision or opportu-
nity allowed him to show its illegality or unconstitution-
ality."

This is the conclusion which would inevitably have
been reached in the Evans case if the court had not

found in the law an opportunity for the landowner to be heard as to the amount of his tax.

With these views the case of *People* v. *Hagar, supra,* is in evident conflict. If the Evans case was correctly decided the attack on the assessment is not collateral:

1. For the reason given in the opinion in Department, that a collateral attack implies a judicial determination in which the parties have been heard, and the determination has therefore become final.

2. Also, because, if it can be said to be an attack upon a final determination, it is one provided by law, and therefore cannot be collateral.

"Any proceeding provided by law for the purpose of avoiding or correcting a judgment is a direct attack, which will be successful upon showing error; while an attempt to do the same thing in any other proceeding is a collateral attack, which will be successful only upon showing want of power." (Van Fleet on Collateral Attack, 5.)

But, in my judgment, a defense of this character cannot properly be called an attack on a final determination, either direct or collateral. The suit is itself a step in a proceeding to subject the property of a taxpayer to the burden of the tax, and the charge does not become final until the suit is determined against the property owner. Otherwise it would be a proceeding in which one might be deprived of his property without due process of law.

Counsel say that it was not intended in the Evans case to hold that, in defense of an action to collect the tax, the defendant could call in question the judgment of the commissioners in estimating the proportionate benefits. He could plead as a defense that the commissioners acted arbitrarily, and did not use any judgment at all upon the subject, or pursued an erroneous method, but he cannot turn the court into a board of equalization.

Certainly the court did mean to say that such an opportunity was afforded as would constitute due pro-

cess.   Whether the limited hearing counsel is willing
to concede would satisfy the constitutional requirement
counsel have neglected to discuss.

I think it is just upon the question of the correctness
of the estimate of proportionate benefits that the land-
owner is entitled to be heard, and probably the legisla-
ture could deny him a hearing on any other question,
without rendering the law unconstitutional.   Common
sense would seem to teach that a hearing would be of
little value except as to the points on which the com-
missioners had some discretion, and might be lawfully
influenced by evidence or argument.   True, he may say
that the law has not been followed, or that the act is
unconstitutional.   But he does not lose these defenses
altogether, for an assessment under an unconstitutional
law is invalid, and so is an assessment not made sub-
stantially as directed by law; but, because he cannot call
in question the judgment of the assessor after the charge
has been fixed and final, he ought to be heard before it
has become so.

And again, where an arbitrary standard for ascertain-
ing the burden is fixed by the law—that is, where the
legislature has itself apportioned the tax, no notice or
hearing is required.   (*Hagar* v. *Reclamation Dist.*, 111
U. S. 701; *Spencer* v. *Merchant*, 125 U. S. 345.)

In such case a hearing would be useless.   In other
cases, if it were conceded that the commissioners had in
all respects pursued the law, still the taxpayer would be
entitled to his hearing.   To say that he can only object
that the law had not been followed would be to hold
that a hearing on the assessment may be denied alto-
gether.

Counsel have cited a great many cases in which it
has been held that the valuation made upon land by
the assessor cannot be called in question in actions to
collect the tax unless the right to do so is provided by
law.   We are not called upon to dispute that proposition
here.   If an assessment has been made as the law pro-
vides, and that law does not violate the constitutional

inhibition alluded to, the tax has become a final charge —if the law so provides—and cannot be called in question because the valuations were erroneous. But these cases have no application here. Here the question is, Did the charge become final until the determination of the suit for its collection? The courts have held that it had not become a final charge, and, if it was held that it had become final, it would be necessary to hold the law invalid.

The Evans case is plain enough upon this proposition. The very question was whether the judgment of the commissioners could be called in question in the action for the collection of the tax. It was held that it could be.

In the case of *Patten* v. *Green*, 13 Cal. 325, the board of equalization raised the assessment without notice. If the taxpayer had been afforded a hearing it would only have been as to the valuation. As he was not allowed such hearing, the order made by the board was set aside.

In *Lent* v. *Tillson*, 72 Cal. 404, it was held the constitutional requirement was complied with if the taxpayer could be heard as to the amount of the tax.

I do not agree with counsel on the proposition that the excluded evidence consisted solely of the opinions of witnesses to be set against the opinions of the commissioners. There was evidence other than the opinions of witnesses on the direct point of proportionate benefits, which, if true, showed gross inequality.

For these reasons and those stated in the opinion rendered in Department the judgment and order are reversed.

GAROUTTE, J., HARRISON, J., VAN FLEET, J., McFARLAND, J., and HENSHAW, J., concurred.

The following is the opinion above referred to rendered in Department One on the 11th of March, 1895:

VANCLIEF, C.—The plaintiff purports to be a corporation organized under the provisions of the Political

Code, sec. 3446 *et seq.*, for the reclamation of swamp and overflowed lands, a majority of which are situate in the county of Fresno, and the remainder in the county of Tulare; and the proceedings for the organization of which were taken by petition to the board of supervisors of the county of Fresno.

The object of this action is to recover from the defendant, Phillips, an assessment of $1,542.45 levied upon a tract (300 acres) of his land situate within the plaintiff district, and in the county of Fresno where this action was tried; and, also, to procure an order for the sale of said land to satisfy the assessment.

The San Francisco Savings Union (a corporation) is made a party defendant on the ground that it claims a lien on the assessed land.

The unverified complaint is composed of allegations of all facts necessary to show that the district was duly organized, that the assessment was properly levied, and that the defendant refused to pay the assessment.

The answer of defendants admits that the defendant, Phillips, owns the land alleged to have been assessed to him, but denies all other allegations of the complaint; and then alleges the following further defenses:

1. That defendant's lands were not subject to be embraced in any swamp and overflowed land district formed under the provisions of the Political Code, for the reason that they are not and never have been swamp or overflowed land, but are, and always have been, high and dry lands; that they were originally owned by the government of the United States and never granted to the state of California, but were granted by said government directly to the grantors of the defendant, Phillips, under the laws of Congress providing for the sale of lands belonging to the government of the United States.

2. That the commissioners appointed to view and assess said lands were not disinterested persons; that one of them, F. A. Blakeley, was interested and therefore disqualified to act as such commissioner, because

he was secretary of the board of trustees of plaintiff under a salary at the time he was appointed and during all the time he acted as such commissioner.

3. That the commissioners appointed to view and assess the lands in said district did not view the lands which they assessed to the defendant, Phillips, and did not assess them in proportion to the whole expense of the works and to the benefits resulting to them from such works; but, on the contrary, fraudulently and arbitrarily assessed the lands of the defendant, Phillips, without regard to any benefit to them resulting from said works; and that said works do not, and will not, benefit defendant's lands in any form or to any extent whatever.

The court found, as facts, "That all and singular the allegations contained in plaintiff's amended complaint true as averred." And further specially found for plaintiff on all issues tendered by the answer, and thereupon rendered judgment in favor of plaintiff in accordance with the prayer of the complaint.

The defendants have appealed from the judgment and from an order denying their motion for a new trial.

The assessment-list shows that the whole number of acres assessed was 8,490; that the amount of the assessment was $42,786.48; and that the average rate was $5.04 per acre; that 28 distinct tracts of land were assessed, each to a distinct owner, at rates ranging from $4.11 to $5.55 per acre, except one tract of 26 acres, which was assessed to a railroad company at $10.28 per acre, while the rate of the assessment on defendant's tract of 300 acres involved in this action is $5.14 per acre, being ten cents above the average.

For the purpose of proving that the three hundred acres of land assessed to defendant was not and would not be benefited by the reclamation works, and that the assessment thereof at $5.14 per acre had been arbitrarily imposed without regard to benefits, and was grossly excessive and oppressive, and also to show that the dis-

trict was not lawfully organized, the defendant offered certain documentary evidence and the testimony of several witnesses. All such evidence was objected to by plaintiff's counsel on the ground of incompetency for the following reasons: 1. That the order of the board of supervisors approving the organization of the district is conclusive evidence that all the lands included in the district are swamp and overflowed lands in the sense of section 3446 of the Political Code, and are susceptible of benefit by reclamation; and 2. That the action of the commissioners in apportioning the assessment is likewise conclusive that the assessment of defendant's land is proportionate to the benefits resulting from the reclamation works.

The court heard the evidence offered by defendant without ruling upon the objections thereto at the time they were made, but with the understanding that the questions raised by the objections would be expressly decided before the decision of the case.

The substance of the evidence thus received subject to the objections was: 1. A map of the township according to government survey, showing that defendant's land was segregated from swamp and overflowed land by the government survey; 2. Patent for said land from the United States to defendant's grantor; 3. Written protest of defendant and others against the inclusion of their lands in the district, presented to the board of supervisors of Fresno county in answer to the petition for the formation of the district; 4. The testimony of the defendant, Phillips, and five other witnesses—P. Byrd, Geo. D. Wood, J. T. Brooks, M. C. Wood, and T. J. Hames— tending to prove that only a small part of defendant's land had ever been overflowed, and only five or six times within thirty years; that such overflows did not prevent the raising of a crop thereon during the years. of the overflow; and that defendant's land was not swamp or overflowed land and would not be benefited by the reclamation works.

Before finding the facts the court expressly sustained

the objections of plaintiff to all evidence offered by defendant " touching the character of the lands in the district, the due incorporation of plaintiff, or the question of benefits to the lands." To which rulings defendants duly excepted.

The most important question to be decided is whether or not the court erred in thus excluding defendant's evidence.

The evidence excluded was amply sufficient to justify a finding that at least five-sixths of defendant's land was not, in fact, swamp nor overflowed land, and would not be benefited by the reclamation works.

1. The due organization of the district was alleged in the complaint and denied in the answer, and, therefore, was in issue; and this issue was tendered by plaintiff, and was material. On the part of the plaintiff the affirmative thereof was proved by the order of the board of supervisors of Fresno county, made upon a proper petition after due notice to, and appearance and answer (remonstrance) by, the defendant in this action. That order of the board of supervisors was, therefore, conclusive evidence against the defendant that the district was lawfully organized including his land (though it may not have been so against the state), because it was an adjudication of the same issue tried in this case and between the same parties, and not because the attack upon that order was a collateral attack, nor because the district may have been a *de facto* corporation. The rules as to collateral attack and *de facto* corporations do not apply, it being a case of *res judicata*. (Van Fleet on Collateral Attack, sec. 17, and cases there cited, as to the distinction between *res judicata* and collateral attack). In this connection it is to be noted that the grounds of the written remonstrance filed by defendant with the board of supervisors in answer to the petition for the formation of the district were that defendant's land was not swamp nor overflowed land, and would not be benefited by the proposed works in any degree. Therefore, the order of the board, including defendant's

land in the district, is conclusive against him that the land included was of a character which the law authorized to be included in the district. But the question whether the law authorizes the inclusion of land, under any circumstances, which is not swamp nor overflowed land, or which would not be benefited, is not a question of fact; and, as a question of law, does not appear to have been decided by the board of supervisors. Perhaps lands which are not, in fact, swamp nor overflowed may be benefited in some degree by the reclamation of adjacent swamp and overflowed land; and in some cases it may be impracticable to form a district without including some land that is not swamp nor overflowed. But, however this may be, the law is imperative that all lands included in a district must be assessed in proportion to benefits resulting from the reclamation works; and, consequently, that lands which are not in any way benefited by such works should not be assessed at all.

From the foregoing considerations it follows, I think, that the court did not err in excluding all evidence offered to prove that the plaintiff district was not lawfully organized.

2. But I think the court erred in excluding the evidence tending to prove that defendant's land was not benefited by the reclamation works, and was arbitrarily and excessively assessed, without regard to proportionate benefits. As to this, also, the pleadings raised a material issue tendered by the plaintiff by the allegations that the duly qualified commissioners " did jointly view each and every tract thereof (the district), and did assess upon the same charges proportionate to the entire amount assessed, and to the benefits which would result to each tract from the reclamation works." This allegation having been denied, it devolved upon the plaintiff to prove it; and it is claimed by respondent's counsel that plaintiff did conclusively prove it by the introduction in evidence of the assessment list duly authenticated by the certificate of the commissioners. The contention of respondent's counsel that the assessment-roll in due

form is conclusive evidence that the assessment was lawfully made in proportion to benefits, etc., seems to find countenance in the cases of *People* v. *Hagar*, 52 Cal. 181, and *People* v. *Hagar*, 66 Cal. 59. But in *Reclamation Dist. No. 108* v. *Evans*, 61 Cal. 104, it was held otherwise. That was an action to enforce a swamp land district assessment in which it was contended that the law authorizing such assessment is unconstitutional, since it purports to authorize a deprivation of the taxpayer of his property without due process of law, in that it affords him no opportunity to be heard upon the question as to whether the assessment is proportionate to benefits, as the law requires it to be. The only answer to this by this court was that, inasmuch as the assessment could be enforced only by an action to which the taxpayer must be made a party and to which "the code does not limit the defenses," he is thereby given his day in court, with full opportunity to contest the charge before it is declared a lien upon his land, or reduced to a personal judgment against him. And it appeared that in that case the defendant had set up in his answer "that his lands were not and could not have been benefited by the works of reclamation," but that the trial court had expressly found against him on that issue; and this court affirmed the judgment as being the result of " due process of law."

In a later case than any of those above noticed, viz: *Swamp Land Dist.* v. *Gwynn*, 70 Cal. 566, the identical question under consideration arose and was decided adversely to the views of respondent's counsel. In that case the plaintiff, to prove the assessment, offered the duly certified assessment-roll, to which the defendant objected, and offered to prove that the assessment was arbitrarily made and not proportionate to benefits, etc. To this evidence the plaintiff objected on the ground that it was irrelevant, immaterial, and incompetent; and the trial court sustained the objection. This was held to be error for which alone the judgment was reversed, this court saying that the assessment-roll was only *prima*

*facie* evidence, and, as such, was subject to be contradicted. . . . . We think that, notwithstanding the certificate signed by the commissioners, the defendants were entitled to prove, if they could, that the assessment involved in this case was not made in conformity to the requirements of the law, and so was not binding upon them, and that the court erred in excluding the proper evidence." (Citing *People* v. *Coghill*, 47 Cal. 361; *People* v. *Hagar*, 49 Cal. 229; and *People* v. *Ahern*, 52 Cal. 208); which apply the same principle to a different defect in assessments by swamp land districts.

The constitutional question raised in *Reclamation District* v. *Evans, supra,* as to due process of law, arose in *Hagar* v. *Reclamation District No. 108*, 111 U. S. 701, in which the opinion of the court was written by Mr. Justice Field, who admits that where a tax or assessment is required to be levied in proportion to the value of the property assessed, or in proportion to benefits to such property, it would not be due process of law to enforce the payment of such tax or assessment without giving the owner of the land assessed an opportunity to be heard on the question of value or benefits, but holds that, where the assessment can be enforced only by an ordinary action at law to which the taxpayer is made party, it is immaterial whether or not he had notice or opportunity to be heard before the commencement of the action. "In such cases," says the learned justice, "all the opportunity is given to the taxpayer to be heard respecting the assessment which can be deemed essential to render the proceedings due process of law. . . . . The assessment under consideration could, by the law of California, be enforced only by legal proceedings, and in them any defense going either to its validity or amount could be pleaded. . . . . In them he may set forth, by way of defense, all his grievances." (Citing *Reclamation Dist. No. 108* v. *Evans, supra.*)

It is not pretended that the defendant had any opportunity to be heard as to the propriety or legality of the assessment before this action was commenced; but it is

claimed that, having been heard as to the propriety of the formation of the district and the inclusion of his lands therein, the order of the board of supervisors including his lands is conclusive of the legality of the subsequent assessment of them. But the legality of no subsequent assessment was in question, or could have been questioned, before the supervisors on the hearing of the petition for the formation of the district. While, as we have seen, the order of the board of supervisors was conclusive, as against the defendant, that the district including his lands was lawfully organized, it was not and could not have been so far-reaching as to touch the question whether subsequent assessments would be lawfully imposed according to benefits.

It is further contended that defendant's defense is a collateral attack upon the determination of the assessment commissioners, and, therefore, not permissible. Conceding it to be a collateral attack (which I think questionable), yet a collateral attack is precluded only where the judgment, order, or determination attacked was, or may be presumed to have been, the result or effect of due process of law, which implies that the party against whom such judgment, order, or determination was rendered or made was heard, or had an opportunity to be heard, in his defense. But where it does not appear and cannot be presumed that such party was heard, or had an opportunity to be heard, any judgment, order, or determination against him is without due process of law and void; and, consequently, may be attacked collaterally.

That the Political Code provides no opportunity for the owner of the land assessed to be heard as to the equality of assessments according to benefits, except in defense of the action for the enforcement of such assessments, is not doubted, and has been so decided (*Reclamation Dist. No. 108* v. *Hagar, supra; Hagar* v. *Reclamation Dist. No. 108, supra);* nor does any other law provide for such opportunity. Therefore, there is no ground upon which it can be presumed that defendant was heard or

had an opportunity to be heard; and it does not appear that he was heard. It follows that, if he is to be denied a hearing in defense of this action, he will be deprived of his property without due process of law, contrary to section 13, article I, of the constitution of this state, and the fourteenth amendment of the constitution of the United States.

As shown in the opinion of Mr. Justice Field, above cited, absolute equality of assessments according to benefits is not practically attainable, and may be only approximated even by competent and honest assessors or commissioners. Yet any material overrating of benefits and consequent assessments, injurious to the taxpayer, and not within the maxim *de minimis*, may be pleaded and proved as a defense to an action to enforce the assessment, whether such overrating be the result of fraud, negligence, or incompetence of the commissioners; for it would be no recompense, and but poor consolation to the landowner who has been overtaxed without a hearing, to be assured that the unlawful burden put upon him was the result of an honest judgment of incompetent or negligent commissioners. And the issue as to this should be determined by the tribunal of original jurisdiction (whether a court or a board of equalization) according to a satisfactory preponderance of evidence, allowing just weight to what may appear to have been the honest judgment of the commissioners.

3. I think defendant's land is sufficiently described in the assessment-list. Although the abbreviations used are not those ordinarily used, they are such as are uniformly used in that list, and must have been understood by all taxpayers who examined them. For example, the W. ½ of S. E. ¼ of section 28, Tp. 17, is described thus: " W.² of S. E.⁴ of sec. 28, Tp. 17 "; and by such abbreviations all subdivisions of sections in the list are described.

4. It is contended by appellant that F. A. Blakeley was disqualified for the office or position of commissioner to view and assess the land, for the reason that he was

interested in the matter of those assessments. But the only evidence of his interest is that, at the time he was appointed commissioner, and during the time he acted as such, he was the secretary of the board of trustees of the district, receiving a salary. He owned no land in the district, and had no pecuniary interest that could have been affected by the assessments, though he received his appointment to the office of secretary from the trustees of the district, who owned a majority of the land in the district, and held that office at their pleasure. The law (Pol. Code, sec. 3456) requires the board of supervisors by which the district was formed to "appoint three commissioners, disinterested persons, residents of the county in which the district or some part thereof is situated, who must view and assess upon the lands situated within the district a charge proportionate to the whole expense, and to the benefits which will result from such works." I think Blakeley was a "disinterested person" in the sense of this section of the Political Code, and that the most that can be properly said against his appointment is that, if his relation to the board of trustees of the district was known to the board of supervisors at the time he was appointed, the appointment was injudicious, because the appointee, under such circumstances, was liable to a suspicion that he might be improperly influenced by members of the board of trustees of the district.

For the error in excluding evidence offered by the defendant, as above stated, I think the judgment and order should be reversed and the cause remanded for a new trial.

BELCHER, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed and the cause remanded for a new trial.

GAROUTTE, J., HARRISON, J., VAN FLEET, J.